**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| SULAV GENERAL TRADING & CONTRACTING COMPANY, | |
| *Plaintiff,* | |
| v. | Civil Case No. 1:25-cv-01344 |
| UNITED STATES OF AMERICA, DEPARTMENT OF THE ARMY, DANIEL P. DRISCOLL, BOBBY L. CHRISTINE (in their official capacities), | |
| *Defendants.* | |

**OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

Gregory P. Rosen (Va. Bar No. 82584)
ROGERS JOSEPH O'DONNELL, P.C.
1500 K. Street, NW, Suite 800
Washington, DC 20005
Ph:     (202) 777-8950
Fax:    (202) 347-8429
Email:     *grosen@rjo.com*

Attorney for Sulav General Trading & Contracting Company

5256081.4

## TABLE OF CONTENTS

**Page No.**

I.    INTRODUCTION .............................................................................................1

II.   THE ARMY APPLIED THE WRONG GOVERNING LAW IN
      DEFIANCE OF STATUTE AND REGULATION ..........................................2

      A.    The FCA Requires Commissioners to Follow Binding
            Department Regulations ....................................................................2

III.  THE ARMY'S MISAPPLICATION WAS PREJUDICIAL...............................5

IV.   LIMITED JUDICIAL REVIEW IS AVAILABLE UNDER THE FIFTH
      AMENDMENT................................................................................................8

      A.    Judicial Review is Possible for Constitutional Questions. ...............8
      B.    A Prejudicial Violation of a Statutorily-Required Regulation is
            an Error of Constitutional Magnitude...............................................9
      C.    The Government's Attempts to Distinguish *Accardi* Cases is
            Unpersuasive...................................................................................10
      D.    The FCA Statute and Implementing Regulation Place
            Substantive Limits on Official Discretion. .....................................12

V.    SULAV'S LEGAL CLAIM DOES NOT UPEND FCA OR MCA LAW ........15

VI.   CONCLUSION..............................................................................................17

5256081.4

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*United States ex rel. Accardi v. Shaughnessy,*
  347 U.S. 260 (1954)...................................................................................................9, 10

*Armstrong v. Reynolds,*
  22 F.4th 1058 (9th Cir. 2022) ............................................................................................11

*Baragona v. Kuwait Gulf Link Transp. Co.,*
  691 F. Supp. 2d 1346 (N.D. Ga. 2007) ...............................................................................7

*Bd. of Curators v. Horowitz,*
  435 U.S. 78 (1978)..............................................................................................................10

*Broadnax v. United States Army,*
  710 F.2d 865 (D.C. Cir. 1983)....................................................................................2, 8, 9

*Duncan v. West,*
  965 F. Supp. 796 (E.D. Va. 1997) .....................................................................................16

*Duncan v. West,*
  1998 WL 387191, 153 F.3d 719 (Table) (4th Cir. June 24, 1998) ....................................16

*Guevara v. Zanotti,*
  399 F. Supp. 3d 494 (E.D. Va. 2019) .................................................................................4

*Hata v. United States,*
  23 F.3d 230 (9th Cir. 1994) ................................................................................................8

*Johnson v. Robison,*
  415 U.S. 361 (1974).............................................................................................................9

*Labash v. U.S. Dep't of Army,*
  668 F.2d 1153 (10th Cir. 1982) ...........................................................................................8

*Lindahl v. Office of Personnel Management,*
  470 U.S. 768, 791 (1985)......................................................................................................8

*Marozsan v. United States,*
  852 F.2d 1469 (1988)....................................................................................................8, 15

*Mimms v. United States,*
  155 F.3d 445 (4th Cir. 1998) .......................................................................................8, 15

*NB ex rel. Peacock v. D.C.,*
  794 F.3d 31 (D.C. Cir. 2015) .............................................................................................12

ii

*Oestereich v. Selective Serv. Sys. Local Bd. No. 11*,
    393 U.S. 233, 237 (1968)................................................................................................15

*Ralpho v. Bell*,
    569 F.2d 607 (D.C. Cir. 1977).........................................................................................8

*Rodrigue v. United States*,
    968 F.2d 1430 (1st Cir. 1992)....................................................................................8, 16

*Sameena Inc. v. U.S. Air Force*,
    147 F.3d 1148 (9th Cir. 1998).......................................................................................10

*Sanchez v. McAleenan*,
    2024 WL 1256264, at *7 (D. Md. Mar. 24, 2024).........................................................11

*Schneider v. United States*,
    27 F.3d 1327 (8th Cir. 1994).............................................................................8, 12, 14

*Scroggins v. United States,*
    397 F.2d 295, 297 (Ct. Cl. 1968)....................................................................................8

*The Bd. of Regents of State Colleges v. Roth*,
    408 U.S. 564 (1972)......................................................................................................12

*United States v. Caceres*,
    440 U.S. 741 (1979).........................................................................................................9

*United States v. Heffner*,
    420 F.2d 809 (4th Cir. 1969)...........................................................................................9

*Wash. Legal Clinic for the Homeless v. Barry,*
    107 F.3d 32, 36 (D.C. Cir. 1997)..................................................................................12

*Wilson v. Comm'r of Soc. Sec.*,
    378 F.3d 541 (6th Cir. 2004) ........................................................................................10

**Statutes**

Indemnity Act of 1918 (40 Stat. 531 (Pub. Law 65-132)) .............................................5

Iraqi Civil Code, Article 219 ...........................................................................................6

Military Claims Act (10 U.S.C. § 2733) .................................................3, 4, 8, 15, 16

Foreign Claims Act (10 U.S.C. § 2734 *et seq.*) ....................................1, 3, 9, 11, 15, 16

**Constitutional Provisions**

U.S. Const. amend. V.........................................................................................................9

iii

**Regulations**

32 C.F.R. § 536.77 ..............................................................................................3, 4

32 C.F.R. § 536.139 ............................................................................................. *passim*

32 C.F.R. § 536.140 ............................................................................................6, 13

32 C.F.R. § 536.141 ..............................................................................................7

32 C.F.R. § 536.142 ............................................................................................13

Interim Regulations for Condolence or Sympathy Payments to Friendly Civilians
    for Injury or Loss That is Incident to Military Operations, Jun. 22, 2020,
    available at https://media.defense.gov/2020/Jun/23/2002320314/-1/-
    1/1/INTERIM-REGULATIONS-FOR-CONDOLENCE-OR-SYMPATHY-
    PAYMENTS-TO-FRIENDLY-CIVILIANS-FOR-INJURY-OR-LOSS-
    THAT-IS-INCIDENT-TO-MILITARY-OPERATIONS.PDF (last accessed
    January 1, 2026) ............................................................................................14

United States Forces Korea Regulation 526-11 Policy, available at
    https://www.usfk.mil/Portals/105/Documents/Publications/Regulations/USFK
    -Reg-526-11-USFK-Relations-with-Korean-Nationals-Condolence-Visitis-
    and-Solatium-Payments.pdf (last accessed December 30, 2025) ...........................................13

**Other Authorities**

Christopher V. Daming, *When in Rome: Analyzing the Local Law and Custom
    Provision of the Foreign Claims Act*, 39 WASH. U. J. L. & POL'Y 309 (2012),
    available at
    https://openscholarship.wustl.edu/cgi/viewcontent.cgi?article=1009&context=
    law_journal_law_policy (last accessed on January 7, 2026) .......................................4

S. Rep. No. 65-379, at 2 (1918) ........................................................................................2

Thomas W. Merrill, *The Accardi Principle,* 74 GEO. WASH. L. REV. 569, 584
    (2006), available at:
    https://scholarship.law.columbia.edu/faculty_scholarship/3399 (last accessed
    on January 7, 2026)..............................................................................................10

*U.S. Army Claims Service,*
    https://www.jagcnet.army.mil/Home/public/claims.html (last accessed
    December 30, 2025)................................................................................................13

**OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

Sulav General Trading & Contracting Company ("Sulav"), through its counsel, hereby and respectfully opposes the defendants' Motion to Dismiss for Lack of Jurisdiction. *See* ECF Nos. 19, 20.

## I.    INTRODUCTION

This case does not ask the Court to review the merits of the Army's denial of an administrative claim under the Foreign Claims Act ("FCA"), nor does it ask the Court to second-guess discretionary judgments Congress committed exclusively to the United States military. Sulav accepts – as it must – that Congress has made FCA determinations "final and conclusive" in nearly all circumstances. 10 U.S.C. § 2735. Sulav therefore seeks only the limited review[1] available for errors of constitutional magnitude, and the only limited remedy of remand.

In actuality, this case presents a far narrower question: whether the Army may deny an FCA claim by applying a governing body of law that the statute and the Army's own regulations do not authorize.

By way of background, Congress required that Foreign Claims Commissioners "shall perform [their] duties under regulations of the department appointing the commission." 10 U.S.C. § 2734(a)(3). For claims arising in a claimant's home country, the Army's regulations in turn require commissioners to "apply the law and custom of the country in which the incident occurred" to determine entitlement to compensation. 32 C.F.R. § 536.139(a). Here, however, the Army denied Sulav's claim by applying American tort law without citing, analyzing, or even acknowledging Iraqi law.

_____

[1] As noted by the defendants, ECF No. 20, at 17, Sulav seeks this relief under the Due Process Clause, not the Administrative Procedure Act.

1

This error did not afford Sulav the due process required by statute and regulation. The Army relied exclusively on American doctrines of physical injury, foreseeability, and proximate cause – standards materially different from the Iraqi Civil Code framework Sulav identified, and the framework the regulation required the commission to apply. Sulav was lawfully entitled to proper application of that framework.

The government, in its Motion to Dismiss and accompanying Memorandum, characterizes Sulav's claim as an invitation to constitutionalize every regulatory misstep. The government's implied parade of horribles is misplaced. Sulav does not contend that every regulatory violation warrants judicial intervention; it challenges only the application of an unauthorized governing legal framework that determined the outcome.

Courts have long recognized that even where Congress restricts judicial review, review nonetheless remains available for errors of constitutional magnitude. Where an agency bases its decision on an unauthorized governing framework in violation of a statutorily-required regulation and with prejudicial results, the result is an "error going to the heart of the administrative determination" that warrants "limited review." *Broadnax v. United States Army,* 710 F.2d 865, 867 (D.C. Cir. 1983) (internal citations and quotations omitted). Because this is such a case, the motion to dismiss should be denied.

## II.   THE ARMY APPLIED THE WRONG GOVERNING LAW IN DEFIANCE OF STATUTE AND REGULATION

### A.   The FCA Requires Commissioners to Follow Binding Department Regulations

The government highlights that the Secretary "may" appoint foreign claims commissioners. ECF No. 20, at 4 (emphasis added in quote). But that point misses the relevant statutory command. While appointment is discretionary, once appointed, a foreign claims commissioner "*shall* perform his duties under the regulations of the department appointing the

2

commission." 10 U.S.C. § 2734(a)(3) (emphasis added). In other words, Congress expressly conditioned the exercise of the appointment discretion on compliance with department regulations.

a.   The Army's Regulation Required Application of Iraqi Law to Entitlement

The Army's regulation and command is straightforward. "In determining the appropriate award, apply the law and custom of the country in which the incident occurred to determine which elements of damages are payable and which individuals are entitled to compensation." 32 C.F.R. § 536.139(a). In this case, the incident – the theft of millions of dollars from the plaintiff, in a scheme made possible by Army negligence – occurred in Iraq. Iraqi law therefore applies. Nothing in this regulation invokes American tort law, the legal principles used by the Army in its determination in this case.

In defending what was clearly the erroneous application of American law to Sulav's claim, the government offers a tortured reading of the regulation. Focusing on the last sentence of 32 C.F.R. § 536.139(a) ("See § 536.77 for further damages guidance"), the government suggests that perhaps Iraqi law only applies in assessing damages, while American law may apply to entitlement. *See* ECF No. 20 n.13. The government also focuses on 32 C.F.R. § 536.77, which references the application of American law to claims under the Military Claims Act (MCA), but not the FCA. ECF No. 20, at 9-10.

This argument is legally incorrect. 32 C.F.R. § 536.139(a) explicitly requires that "the law and custom of the country in which the incident occurred" govern not only "which elements of damages are payable" but also "which individuals are *entitled* to compensation." § 536.139(a) (emphasis added). By interpreting the last line of 32 C.F.R. § 536.139(a) as contradicting this mandate, the government's reading would make the regulation internally inconsistent. Such an interpretation would violate the Court's anti-surplusage canon of regulatory interpretation. *See*

3

*Guevara v. Zanotti*, 399 F. Supp. 3d 494, 500 n.8 (E.D. Va. 2019) (the Fourth Circuit's requirement that courts "should give effect to every word of a statute whenever possible" also "appl[ies] fully to the interpretation of regulatory language") (internal quotations omitted).

Second, the section the government relies upon to support its proposed distinction between damages and liability applies to the MCA, *not* the FCA. Section 536.139(b) clarifies that only subsections (b) through (d) of § 536.77 apply to FCA claims. The language on which the government relies (ECF No. 20, at 10) appears in § 536.77(a)(1)(i), which falls *outside* the portion incorporated into FCA adjudications. Thus, the government's cross-reference to § 536.77(a)(1)(i) – requiring claim evaluation "under general principles of law applicable to a private individual in the majority of American jurisdictions" – is inapplicable. In fact, the title of § 536.77 is "[a]pplicable laws for claims under the *Military Claims Act.*" (emphasis added). To that end, subsection (a)(1)(i) – invoking "American jurisdictions" makes total sense in the context of the MCA, where the claimant is an inhabitant of the United States (and thus subject to the jurisprudence of the United States). The FCA, on the other hand, applies to those living outside of the United States – like Sulav. The regulatory structure thus makes sense that those living outside of the United States would be governed by local laws and customs, as opposed to whatever the "majority" of American jurisdictions might do.

Finally, the government's argument that it can apply American law to an FCA claim submitted by an Iraqi claimant stemming from an incident in Iraq flies squarely in the face of over a century of statute, regulation, and practice. *See generally* Christopher V. Daming, *When in Rome: Analyzing the Local Law and Custom Provision of the Foreign Claims Act,* 39 WASH. U. J. L. & POL'Y 309 (2012), available at

https://openscholarship.wustl.edu/cgi/viewcontent.cgi?article=1009&context=law_journal_law_

policy (last accessed on January 7, 2026). The author, who served as an Army legal specialist in

Afghanistan, notes that "the local law and custom provision [of Army claims regulations] requires

that the claims commissioner—the person charged with adjudicating a foreign claim—adjudicate

the claim in accord with the local law and custom of the country from which the claim originates."

*Id*. at 309, 312. Nor is the use of local law and custom a recent legal phenomenon. The provision,

as explained by Daming, traces its roots to the Indemnity Act of 1918. *Id*. at 314. That statute was

passed by Congress during World War I at the request of General John Pershing, who complained

that the Army's inability to compensate French civilians for torts committed by American

personnel caused "much hardship and injustice to French people and seriously injures [the

reputation of the American Army in France] as compared with the British." *Id*. at 314 n.18, quoting

S. REP. NO. 65-379, at 2 (1918). In response, Congress passed a law stating that the Army would

pay claims to citizens of allied countries if such payments would be "payable according to the law

or practice governing the military forces of the country in which they occur." 40 Stat. 531 (Pub.

Law 65-132). In defending three commissioners' failure to properly implement a straightforward

Army regulation, the government ignores the regulation's historical context and congressional

intent.

All in all, the Army's own interpretation of the key regulation at the heart of this dispute is

incorrect. Plainly, the Army should have applied Iraqi tort law when assessing Sulav's claim in

the first instance.

## III.    THE ARMY'S MISAPPLICATION WAS PREJUDICIAL

The Army denied Sulav's claim based on three American-law doctrines: lack of physical

injury, lack of foreseeability, and lack of proximate causation. Each doctrine derives from

5

American tort law. None governs liability under Article 219 of the Iraqi Civil Code (or any Iraqi legal corollary).

First, the Army concluded that Sulav could not recover because it suffered only economic harm. ECF No. 20 at 15. Second, the Army concluded that the military was not the proximate cause of the harm suffered by Sulav anyway. *Id.* Neither of these concepts derive from Iraqi law, let alone Article 219, which imposes liability caused by a government's failure to exercise necessary care. The government chastises Sulav for not providing "any further analysis of the regulatory language" or "any nuance its argument about the application of Iraqi law." ECF No. 20 at 15-16 & 16 n.9. But neither does the government. Ironically, had Sulav provided more gloss on Iraqi law, it is likely that the Army would accuse Sulav of seeking a merits review – something precluded by statute.

Instead, the government claims that Iraqi law had *no* place in evaluating liability, in direct contrast of the plain language of the regulation. But had the commission applied Iraqi law, it would have been required to analyze the claim under a materially different legal framework than the American doctrines it relied upon.[2] The Army's complete failure to grapple with any of these doctrines is – in and of itself – prejudicial to whether Sulav was provided constitutionally afforded due process.

The government downplays its application of the incorrect governing law as "a failure to hew exactly to the minutiae of one of the hundreds of regulatory provisions governing the FCA." ECF No. 20, at 20. But this complaint falls flat. Applying the wrong substantive law regarding

---

[2] The government attempts to use prior correspondence (and Sulav's complaints about the process) to undermine the legal argument made by Sulav in this case. *See* ECF No. 20, at 15. This is of no moment. That Sulav had "numerous challenges" to the commissioner's initial determination is irrelevant as to whether the Army correctly applied a regulation it promulgated and was statutorily required to apply. *Id.*

6

liability altogether is drastically different than, for example, a failure to send an FCC appointment memorandum to the correct address (32 C.F.R. § 536.140(d)) or a failure to assign the correct number of commissioners to a given case (32 C.F.R. § 536.141(a)). In other words, the substantive regulation at play matters.

Here, there is an obvious difference between application of the correct and substantive legal standard to an administrative determination and a hypothetical failure to comply with a technical or procedural rule. Sulav has plausibly alleged in its complaint that the Army's failure to apply Iraqi law was outcome-determinative. Had the Army applied Article 219 of the Iraqi Civil Code – which governs the premise liability of a government agency – the Army would not have been limited to physical injuries suffered by Sulav, as the government alleges. *See Baragona v. Kuwait Gulf Link Transp. Co.,* 691 F. Supp. 2d 1346, 1349 (N.D. Ga. 2007) (finding that a tortfeasor owed economic damages to a claimant in a case governed by Article 219 of the Iraq Civil Code), *vacated on other grounds* 691 F. Supp. 2d 1351 (N.D. Ga. 2009). The invocation of proximate cause by the Army has no place in Article 219, which applies liability to tortfeasors when damages are "caused" by their employees' negligence unless "the injury would have happened had [the tortfeasor] exercised the necessary care." ECF No. 1-6 at 9. Even the Army's foreseeability analysis ignored Iraqi law. ECF No. 20 at 15.

While the government correctly notes that the FCA regulations provide the military with ample discretion to deny claims, ECF No. 20, at 22 n.11, none of those apply here (or are even alleged by the military to apply). Instead, all of the available evidence suggests that Sulav has been denied recovery due solely to the misapplication of American tort law – in direct contravention to

statute and regulation. This alleged prejudice is sufficient to trigger due process protections.

## IV. LIMITED JUDICIAL REVIEW IS AVAILABLE UNDER THE FIFTH AMENDMENT

While the parties clearly disagree about the scope of Iraqi law and the plain reading of § 536.139, the seminal issue presented here is whether judicial review is ultimately precluded. Because the issue Sulav raises is constitutional, limited judicial review is available.

### A. Judicial Review is Possible for Constitutional Questions.

Sulav agrees that judicial review is generally precluded by law. But this rule is not absolute, particularly when an administrative denial raises a "question of constitutional magnitude." *Mimms v. United States*, 155 F.3d 445, 453 (4th Cir. 1998) (discussing the FCA's statutory sibling, the MCA). Our next-door D.C. Circuit has described this exception as encompassing errors "going to the heart of the administrative determination," including misconstruction of the governing law. *Broadnax v. U.S. Army*, 710 F.2d 865, 867 (D.C. Cir. 1983), citing *Scroggins v. United States,* 397 F.2d 295, 297 (Ct. Cl. 1968) (internal citations omitted). Other circuits concur. *See, e.g.*, *Labash v. U.S. Dep't of Army*, 668 F.2d 1153, 1155 (10th Cir. 1982); *Rodrigue v. United States,* 968 F.2d 1430, 1434 (1st Cir. 1992); *Schneider v. United States*, 27 F.3d 1327, 1332 (8th Cir. 1994); *Hata v. United States,* 23 F.3d 230, 233 (9th Cir. 1994), quoting *Lindahl v. Office of Personnel Management,* 470 U.S. 768, 791 (1985). Thus, the question turns on what defines the error.

In assessing whether an error rises to a constitutional violation, it is axiomatic that no statute can purport to give executive branch employees the authority to directly violate the Fifth Amendment, without being subject to judicial scrutiny. "If the courts are disabled from requiring administrative officials to act constitutionally, it is difficult to see who would perform that function." *Ralpho v. Bell,* 569 F.2d 607, 620 (D.C. Cir. 1977). This obviously includes inherent administrative decision-making. In *Marozsan v. United States*, the Seventh Circuit permitted a due

5256081.4

process challenge to an agency's process for considering veterans' disability claims. While the relevant statute did not provide for judicial review of the agency's decision, the Seventh Circuit held that a court could nevertheless consider the "constitutionality of the procedures used by the [agency]." *Marozsan v. United States,* 852 F.2d 1469, 1470 (1988). The Supreme Court has also held that courts may consider a constitutional defect barring "an explicit provision of [the statute which] bars judicial consideration of appellee's constitutional claims," notwithstanding a statute stating that an agency's decisions were "final and conclusive." *Johnson v. Robison*, 415 U.S. 361, 367 (1974).

### B.  A Prejudicial Violation of a Statutorily-Required Regulation is an Error of Constitutional Magnitude.

In this case, Sulav's argument for constitutional review stems from the Due Process Clause's requirement that no person shall be "deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "[D]ue process" requires an agency to follow its own regulations. *United States ex rel. Accardi v. Shaughnessy,* 347 U.S. 260, 268 (1954). As the Fourth Circuit has held, "[a]n agency of the government must scrupulously observe rules, regulations, or procedures which it has established. When it fails to do so, its action cannot stand and courts will strike it down." *United States v. Heffner,* 420 F.2d 809, 811 (4th Cir. 1969), citing *Accardi,* 347 U.S. at 267. As the Supreme Court has held, the rule announced in *Accardi* "is most evident when compliance with the regulation is mandated by the Constitution or federal law." *United States v. Caceres,* 440 U.S. 741, 749 (1979).

Here, an enabling FCA statute requires commissioners to follow their own service's promulgated FCA regulations. 10 U.S.C. § 2734(a)(3). And the regulation in question mandates commissioners apply Iraqi law when assessing liability under the FCA. 32 C.F.R. § 536.139(a). In failing to do so, the Army engaged in a substantive legal process that directly impacted the analysis

5256081.4

"going to the heart of the administrative determination." *Broadnax*,710 F.2d at 867, (internal quotations omitted).

The government argues Sulav is merely repackaging a regulatory dispute as a constitutional claim. Not so. Sulav's challenge is limited to an outcome-determinative departure from a statutorily mandated regulatory command regarding the governing legal framework, an error going to the heart of the administrative determination.

Under *Accardi,* this sort of violation of an agency's own regulation is cognizable under the Due Process Clause. *See Sameena Inc. v. U.S. Air Force,* 147 F.3d 1148, 1153 (9th Cir. 1998) ("An agency's failure to follow its own regulation…may result in a violation of an individual's constitutional right to due process"); *See also Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 545 (6th Cir. 2004). The government disagrees that *Accardi* necessarily articulates a constitutional principle, citing the Supreme Court's footnote in *Bd. of Curators v. Horowitz*, 435 U.S. 78, 92 n.8 (1978)). *See* ECF No. 20, at 20. As the government suggests, this footnote from *Horowitz* is dicta. *Id*. And the fact that two federal circuits (referenced above) have referred to *Accardi* as a constitutional principle since *Horowitz* demonstrates a constitutional question that remains live. *See generally* Thomas W. Merrill, *The Accardi Principle,* 74 GEO. WASH. L. REV. 569, 584 (2006), available at: https://scholarship.law.columbia.edu/faculty_scholarship/3399 (last accessed on January 7, 2026) ("There is no suggestion that the Court has disavowed the *Accardi* doctrine. It has simply had no occasion to enforce it, and hence has provided no additional guidance").

C.     **The Government's Attempts to Distinguish *Accardi* Cases is Unpersuasive.**

Here, a statute and corresponding regulation mandated the application of substantive law on an issue of property interests, and the agency wholly disregarded that legal obligation. In a footnote, the government attempts to distinguish Sulav's case from a recent District of Maryland case citing *Accardi* as constitutional, arguing that the *Accardi* doctrine is really only available to

10

those claimants that "reasonably relied" on such regulations for its benefit. ECF No. 20, at 21 n.10 (quoting *Sanchez v. McAleenan,* 2024 WL 1256264, at *7 (D. Md. Mar. 24, 2024). In the same footnote, the government makes a rather conclusory statement that "the Army's FCA regulations were certainly not promulgated for plaintiff's benefit," and that Sulav did not "reasonably rely" on the regulations. Neither statement is correct.

As an initial matter, not all courts agree that the Constitution only protects an "intended beneficiary" who "reasonably relies" on a particular regulation. The Ninth Circuit has held that constitutional due process protections apply when the party "alleging a due process violation has an entitlement to the benefit at issue, conferred through statute, regulation, contract, or established practice," without reference to whether the claimant is an "intended beneficiary" of the statute, regulation, contract, or established practice. *Armstrong v. Reynolds*, 22 F.4th 1058, 1067 (9th Cir. 2022).

Yet even if the government is correct that only an "intended beneficiary" can raise a constitutional objection to an agency's arbitrary violation of its own regulation, it is unclear why the government believes that the Army's FCA regulations "were not promulgated for [Sulav's] benefit." While it is true that the Foreign Claims Act was passed by Congress "to promote to maintain friendly relations," Congress chose to do so "through the prompt settlement of meritorious claims." 10 U.S.C. § 2734(a). While the ultimate purpose of the FCA and its implementing regulations might be to bolster cooperation between the military and the civilian population in the places the military operates, both Congress and the Secretary of the Army have opted to do so by "prompt[ly] settl[ing] meritorious claims" based on the "law and custom of the country in which the incident occurred." 10 U.S.C. § 2734(a); 32 C.F.R. § 536.139(a). As a claimant who has plausibly, and with specificity, alleged a meritorious claim based on the law and

11

custom of its home country, Sulav is within the class of beneficiaries that the statute and regulation intended to benefit – albeit with the end goal of promoting friendly relations between the U.S. military and Iraqi people. It is similarly unclear why the government believes that Sulav did not "reasonably rely" on the Army's FCA regulations. As the letterhead on Sulav's initial claim and request for reconsideration makes clear, Sulav retained an American law firm to assist it in preparing its FCA claim. ECF Nos. 1-2; 1-4. Had the Army regulations not promised Sulav a legal – and not arbitrary – FCA determination under a fixed legal standard, Sulav would have had no reason to have done so.

> **D.     The FCA Statute and Implementing Regulation Place Substantive Limits on Official Discretion.**

Here, Sulav possessed a property interest that triggered due process rights under the Constitution. Contrary to the government's suggestion, ECF No. 20, at 21-22, the due process clause provides "an opportunity to file a claim for settlement" that will be adjudicated in accordance with statute and regulation. *See Schneider*, 27 F.3d at 1333. Congress further crafted a property interest, which the Army then adopted. "Property interests . . . are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as [a statute] – rules or understandings that secure certain benefits and that support claims of entitlement to that benefits." *The Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972). If "the government retains 'unfettered discretion' to withhold the benefit even upon satisfaction of all eligibility criteria, 'no constitutionally protected property interest exists.' But if the statute or implementing regulations place 'substantive limitations on official discretion' to withhold award of the benefit upon satisfaction of the eligibility criteria, there is a legitimate claim of entitlement, as to which the Due Process Clause affords protection." *NB ex rel. Peacock v. D.C.,*

12

794 F.3d 31, 41–42 (D.C. Cir. 2015) quoting *Wash. Legal Clinic for the Homeless v. Barry,* 107 F.3d 32, 36 (D.C. Cir. 1997). (internal citation omitted).

In this case, the Army's FCA regulations clearly demonstrate an agency's decision to subject FCA settlements to a legal process involving liability and damage(s) assessments. Underscoring this agency commitment to a legal (and not unfettered discretionary process) process for settling such claims, these decisions are not made by local commanders or civil affairs officers, but by attorneys of law in almost all cases. 32 C.F.R. § 536.142 (requiring at least two members of a three-member claims commission to be attorneys). Furthermore, 32 C.F.R. § 536.140(a) requires that commissioners be appointed by the commander of the United States Army Claims Service ("USARCS"), an agency "established in 1963 to accompany the significant expansion of *legal rights* for those who experienced injury, death, or property damage or loss due to the official actions of Army employees." *U.S. Army Claims Service,*

 https://www.jagcnet.army.mil/Home/public/claims.html (last accessed December 30, 2025) (emphasis added). USARCS' website explains that the agency "promptly and fairly review claims by and against the Army, paying those which are meritorious, denying those which or not, and recovering funds expended by the Army because of the wrongful acts of third parties." *Id.*

All in all, the FCA process is administered by lawyers, based on legal standards, and committed to the legal rights for those who experience loss due to the official actions (or inaction) of Army employees. This stands in stark contrast to other military programs to compensate foreign civilians where such discretionary is unbound. In South Korea, for example, military commanders are permitted to make *solatia* payments to Korean civilians "as solace for injury or death". These payments are made "without reference to fault and are not regarded as an admission of guilt or civil liability." United States Forces Korea Regulation 526-11, United States Forces Korea

13

Relations with Korean Nationals: Condolence Visits and Solatia, Paragraph 2-1. Policy, available at

https://www.usfk.mil/Portals/105/Documents/Publications/Regulations/USFK-Reg-526-11-USFK-Relations-with-Korean-Nationals-Condolence-Visitis-and-Solatium-Payments.pdf    (last accessed December 30, 2025). Similarly, Congressional statutes have authorized commanders to make *ex gratia* payments to civilians harmed by combat operations. Military regulations note that *ex gratia* payments "are not legally required, nor may they be construed or considered as an admission or an acknowledgment of any legal obligation to provide compensation, payment, or reparations for property damage, personal injury, or death." Interim Regulations for Condolence or Sympathy Payments to Friendly Civilians for Injury or Loss That is Incident to Military Operations, Jun. 22, 2020, available at https://media.defense.gov/2020/Jun/23/2002320314/-1/-1/1/INTERIM-REGULATIONS-FOR-CONDOLENCE-OR-SYMPATHY-PAYMENTS-TO-FRIENDLY-CIVILIANS-FOR-INJURY-OR-LOSS-THAT-IS-INCIDENT-TO-MILITARY-OPERATIONS.PDF (last accessed January 1, 2026). That the military *could* have denied Sulav's claims on other grounds – grounds that have no basis in the current record – does not transform the process into one of unlimited discretion.

To be clear, Sulav does not claim a property interest in actual payment or even a grant of an FCA award. The protected interest here is the process Congress and the Army promised: adjudication under the governing legal framework specified by statute and binding regulation. *See Schneider*, 27 F.3d at 1333. The FCA's statutory command that commissioners shall perform duties under department regulations, coupled with the regulation's mandatory direction to apply local law and custom to determine entitlement, imposes substantive constraints on the decisional

14

framework. At minimum, due process precludes denying a claim by applying a legal regime the governing regulation does not authorize.

Given this, Sulav has established a basis for limited judicial review. The only relief Sulav seeks is remand for adjudication under the governing legal framework required by § 2734(a) and § 536.139(a).

## V.     SULAV'S LEGAL CLAIM DOES NOT UPEND FCA OR MCA LAW

Contrary to the government's implied floodgates arguments, Sulav does *not* argue that every regulatory violation rises to constitutional magnitude. *See, e.g.*, ECF No. 20, at 16 ("Because, in plaintiff's view, any violation of an agency regulation . . . serves as a violation of constitutional rights"). Nor does it seek review of discretionary determinations. Rather, it invokes a narrow exception when the Army misapplied an entire body of law that the statute and its corresponding regulations forbid. Its request is modest, and allows the government to maintain near-total discretion to make legal and factual determinations under the legal regime. A decision to remand would not transform the FCA into an open-ended review of military determinations.

Indeed, we even recognize that under 10 U.S.C. § 2735, a future FCA determination that credibly asserts compliance with Army regulations would be "final and conclusive", and *not* subject to judicial review. Even if Sulav disagreed with the ultimate conclusion or some of its factual underpinnings, courts are "properly reluctant to look into complex, fact bound, discretionary determinations of an agency's decision making process." *Marozsan v. United States*, 852 F.2d 1469, 1477 (7th Cir. 1988). "But they must be equally reluctant to license 'free-wheeling agencies [to mete] out their own brand of justice.'". *Id.,* quoting *Oestereich v. Selective Serv. Sys. Local Bd. No. 11*, 393 U.S. 233, 237 (1968).

Respectfully, the government's case comparisons fall flat. ECF No. 20, at 18, 24. To start, Sulav's requested relief is limited. Moreover, the cases cited by the defendants are distinct. In

15

*Minns*, for example, the plaintiffs challenged the Air Force's denial of its MCA claim, but made no challenge to whether the Air Force violated the Constitution, let alone its own regulations. *Minns v. United States*, 155 F.3d 445, 453 (4th Cir. 1998). While *Minns* plaintiff sought a remand to await "completion of the pending studies on the effects of Gulf War inoculations and pesticides," *id.* at 452-53, the plaintiffs identified no statutory or constitutional infringement of his or her right. The Air Force was well within its statutory discretion to settle the claim without waiting on a particular study to conclude.

The government cites *Rodrigue* approvingly to support the holding that "incorrect application of the law of torts by an agency does not violate the Constitution" in and of itself. *See* ECF No. 20, at 24 (citing 968 F.2d at 1434). True enough. But *Rodrigue* involved an alleged misapplication of American tort principles *within* the authorized framework – not a wholesale substitution of an unauthorized governing law in derogation of a binding regulatory command. That distinction is dispositive.

*Duncan* is similarly unavailing. *See* ECF No. 20, at 24. In *Duncan v. West*, 153 F.3d 719, 1998 WL 387191 (4th Cir. 1998), the Fourth Circuit rejected review of an MCA claim, affirming Judge Ellis's order to dismiss. *Id.* at *1. But *Duncan*'s nuances are key: at the district court, Judge Ellis held that the regulation governing the Army's settlement of an MCA claim was "not statutorily or constitutionally based or required." *See* ECF No. 20, at 21 (quoting *Duncan*). This outcome hinged upon a key distinction between the FCA, where a foreign claims commissioner is obligated by statute to comply with regulations, and the MCA, where no such requirement exists. *Compare* 10 U.S.C. § 2734(a)(3) (obligating commissioners under the FCA to comply with service regulations) *with* 10 U.S.C. § 2733 (stating that agency officials who settle MCA claims have "the same authority" as their service secretary). *Duncan* – where a plaintiff alleged a violation of a non-

16

statutorily required regulation – is therefore inapposite. It is worth noting that, as Judge Ellis recognized, it was far from clear that the Army had actually violated its regulation in the first place. *Duncan*, 965 F. Supp. 796, 801 (E.D. Va. 1997). The same cannot be credibly said here.

## VI.    CONCLUSION

Because Sulav has plausibly alleged that the Army denied its FCA claim by applying the wrong governing law in violation of statute and regulation – and because that error was outcome-determinative – the Court has jurisdiction to consider this narrow constitutional claim. The government's motion to dismiss should be denied.

Respectfully submitted,

*/s/ Gregory P. Rosen*
Gregory P. Rosen (Va. Bar No. 82584)
ROGERS JOSEPH O'DONNELL, P.C.
1500 K. Street, NW, Suite 800
Washington, DC 20005
Ph:      (202) 777-8950
Fax:    (202) 347-8429
Email: *grosen@rjo.com*

Attorney for Sulav General Trading & Contracting Company

### CERTIFICATE OF SERVICE

I hereby certify that on the 12th day of January, 2026, a true copy of the foregoing document was served on the attorney of record for each party via the Court's ECF/CM system, including Assistant United States Attorney Dennis Barghaan, Civil Chief. Consistent with judicial practice, a hard copy will be provided to chambers within 24 hours of filing.

*/s/ Gregory Rosen*
Counsel for Sulav

17

5256081.4